**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FLORENCE KOCHER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DENIS MCDONOUGH, Secretary of** | : | |
| **Veterans Affairs, Department of** | : | |
| **Veterans Affairs** | : | **NO. 21-921** |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                        **December 22, 2022**

In this employment discrimination action, plaintiff Florence Kocher, a 62 year-old female employed by the Veterans Affairs Medical Center in Philadelphia ("VA") as a Patient Safety Manager since 2013, asserts claims that her low performance ratings and unsatisfactory proficiency reports were the result of age and gender bias and that she was retaliated against for prior EEO activity.  Moving for summary judgment, the VA contends that Kocher has not satisfied her burden of showing a *prima facie* case of discrimination or retaliation.  It argues she has not established an adverse employment action or facts giving rise to an inference of discrimination or retaliation.

Because she did not suffer an adverse employment action and she has presented no evidence that the VA's actions were based on her age or gender, Kocher has failed to establish a *prima facie* case of employment discrimination.  Nor has she shown a causal connection between any protected EEO activity and a VA reaction that could have dissuaded a reasonable employee from making or supporting a charge of discrimination. Therefore, we shall grant the VA's motion and enter judgment in its favor.

**Background**

Kocher's complaint may be summarized as follows.  She was rated as failing in two areas in a Performance Improvement Plan in November 2018.  She was given an overall rating of "low satisfactory" in her FY 2018 Proficiency Report.  She was not permitted to include her self-evaluation on the same VA Form 10-2623 as her FY 2018 Proficiency Report.  Her health condition was referenced in the initial version of her FY 2018 Proficiency Report.  After the medical information was removed from the Report, the initial version of her Report remained in her electronic personnel file.  Her second-line supervisor sent her an unencrypted email that included the Proficiency Report containing her health information as well as her partial social security number.

Tracey Schoen was Kocher's first-line supervisor throughout 2018.[1]  In August 2018, in a Performance Improvement Plan ("PIP"), Schoen rated Kocher's performance as failing in two "critical dimensions" of her position: practice and collaboration.[2]  Schoen iterated the standards, discussed Kocher's performance, and advised her how to improve her performance.  Areas needing improvement included Kocher's preparation of the Patient Safety Annual Report, her Root Cause Analysis ("RCA")[3] presentation to VA leadership, and her collaboration with peers and colleagues within her interdisciplinary group.

After receiving the PIP, Kocher filed a grievance with the VA, arguing that the PIP

---

[1] *See* Pl.'s Statement of Undisputed Facts ¶ 2 (Doc. No. 26-2 at 3-6) ("PSUFs"); Management Affidavit of Tracy Schoen (Doc. No. 24-3).

[2] *See* PIP, dated Aug. 10, 2018 (Doc. No. 24-7); PSUFs ¶ 7.

[3] An RCA team examines health care-related adverse events and close calls, and investigates how well patient care systems function.  U.S. Dep't of Veterans Affairs, Nat'l Ctr. for Patient Safety, https://www.patientsafety.va.gov/professionals/onthejob/rca.asp (last visited Dec. 21, 2022).

was procedurally defective because management had issued it without consulting her union.  In response, the VA rescinded the PIP and changed the document's name to "Proficiency Counseling."[4]  Except for the title, the document, originally dated August 10, 2018 and amended on November 1, 2018, remained unchanged.[5]

On January 11, 2019, Kocher received her FY 2018 Proficiency Report covering her performance from October 1, 2017 to September 28, 2018.  It was signed by Schoen, the rating official, and Brian Gainsley,[6] as the approving official.  Kocher was rated "Satisfactory" in "Nursing Practice," "Unsatisfactory" in "Interpersonal Relationships", and "Low Satisfactory" in the "Overall" rating.[7]  The report described problems she had conducting meetings without key participants and difficulties collaborating with team members and building relationships, including demeaning and criticizing colleagues, not accepting constructive criticism, and demonstrating aggressive, hostile behavior in meetings.  The report noted an incident where Kocher withheld information from a colleague and made her cry while criticizing her.

Kocher disagrees with Schoen's assessment.  She contends that it was Schoen— not her—who exhibited hostile behavior, including being loud, aggressive, and even spitting in the face of the union representative.  With respect to the incident with the colleague who cried, she claims Schoen took her statements out of context and

---

[4] *See* Nov. 1, 2018 Memo from Gainsley noting change of name of 8/10/18 PIP to "Proficiency Counseling" (Doc. No. 24-11).

[5] *See* Proficiency Counseling (Amended), dated Nov. 1, 2018 (Doc. No. 24-12); PSUFs ¶ 10-11.

[6] Brian Gainsley, the interim chief of Quality Management, was Kocher's second-line supervisor from July, 2018 until February 2019.  He took over for Bruce Boxer, the Chief of Quality Management, who was her second-line supervisor from January through July 13, 2018.  PSUFs ¶¶ 3-4.

[7] *See* FY 2018 Proficiency Report (Doc. No. 24-15); PSUFs ¶¶ 13-19.

disregarded the colleague's inappropriate emotional response. Kocher also notes that she cannot control who attends meetings.

Kocher also criticizes the Proficiency Report for failing to include her self-evaluation on VA Form 10-2623. Although she provided a self-evaluation prior to the issuance of the FY 2018 Proficiency Report and Schoen included it in the Report, Kocher requested that her self-evaluation be transposed onto an official VA Form 10-2623 template. Gainsley informed her that her self-evaluation could not be placed on that template because it was a time-consuming process and not required. Kocher's self-evaluation is part of her personnel file.

Another critique Kocher has of the FY 2018 Proficiency Report is that it referenced a heart attack she had had in April 2018 while at work. Because she had not given consent to Schoen or Gainsley to discuss her health condition, she complained to Celita Rivera, a Privacy Officer, that the reference to her private health information ("PHI") in her FY 2018 Proficiency Report was a privacy violation.[8] Additionally, she complained to Rivera that her second-line supervisor violated privacy rules when she sent her an unencrypted email that included the Proficiency Report containing her health information and her partial social security number. In response, the VA removed the reference to her health condition from the final Proficiency Report, and required Schoen and Gainsley to retake privacy and security training classes. About a month later, Kocher saw the earlier version of the Proficiency Report containing the PHI on her personnel electronic personnel file. The original report had been improperly scanned into her personnel file. Rivera directed HR to remove the document from the file the next day.

---

[8] *See* Documents Regarding Privacy Complaint (Doc. Nos. 24-18, 24-19, 24-20, 24-21, 24-22).

## Standard of Review

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In considering the motion, we draw all reasonable inferences in the nonmovant's favor. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate

inferences from facts and the weighing of evidence are matters left to the jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

## Analysis

Because Kocher is proceeding under a pretext theory and does not present "direct evidence" of discrimination, her claims are governed by the burden-shifting *McDonnell Douglas* analysis. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002); *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095, n. 4 (3d Cir. 1995). She must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citations omitted); *Capps v. Mondelez Glob., LLC*, 847, F.3d 144, 151–52, 156 n.12 (3d Cir. 2017); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (citation omitted). Establishing a *prima facie* case of discrimination "is not onerous and poses a burden easily met." *C.A.R.S.*, 527 F.3d at 365 (internal quotation marks omitted) (quoting *Tex. Dep't of Corr. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). Under most circumstances, whether a plaintiff has established a *prima facie* case is a question of law. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 347 n.1 (3d Cir. 1999).

If Kocher succeeds in establishing a *prima facie* case, the burden shifts to the VA to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Willis v. UPMC Children's Hosp. of Pitts.*, 808 F.3d 638, 644 (3d Cir. 2015) (quoting *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 412 (3d Cir. 1999)); *see also In re Trib. Media Co.*, 902 F.3d 384, 401–02 (3d Cir. 2018). This burden is "relatively light." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *see also Bryan v. Government of Virgin Islands*, 916 F.3d 242, 248 (3d Cir. 2019) (citation omitted). The VA can satisfy its burden by

"introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *see also Trib. Media Co.*, 902 F.3d at 401–02 (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 n.2 (3d Cir. 1998)).  The burden is one of production, not persuasion.  *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000).  It is not necessary to prove that the proffered reason actually motivated its decision. *Fuentes*, 32 F.3d at 763.  It need only show that the decision could have been motivated by the proffered legitimate, non-discriminatory reason.  *Id.*; *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999).

If the VA satisfies its burden, Kocher must then produce evidence from which a reasonable factfinder could conclude that the proffered reason for taking the adverse action was merely a pretext for intentional discrimination.  *Willis*, 808 F.3d at 644 (citing *Burton*, 707 F.3d at 426–27).  She may discredit the proffered reason by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons."  *Id.* at 644–45 (citing *Fuentes*, 32 F.3d at 765).  She can meet her burden by producing evidence from which a factfinder could conclude that the adverse employment action was more likely than not the result of discrimination.  *Willis*, 808 F.3d at 645 (citing *Fuentes*, 32 F.3d at 764).

In other words, Kocher must offer "evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons . . . or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *In re Trib. Media Co.*,

902 F.3d at 402 (quoting *Fuentes*, 32 F.3d at 764); *see also Willis*, 808 F.3d at 644–45. The final burden of production "merges with the ultimate burden of persuading [the jury] that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

## Age and Sex Discrimination

To establish a *prima facie* case of intentional employment discrimination based on disparate treatment, Kocher must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated persons who are nonmembers of the protected class were treated more favorably under circumstances giving rise to an inference of a discriminatory motive. *Willis*, 808 F.3d at 644 (citing *Burton*, 707 F.3d 4 at 426); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citation omitted).

It is undisputed that Kocher satisfies the first two elements.  She was a 62 year-old female when the November 2018 Proficiency Counseling was issued.  The VA concedes that she was qualified for her job as Patient Safety Manager.  The VA disputes that she suffered an adverse employment action and that there is evidence giving rise to an inference of discrimination.  With respect to retaliation, it contends there is no causal connection between any adverse action and protected activity.

## Adverse Employment Action

An "adverse employment action" under Title VII's anti-discrimination provision is "'an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)) (internal quotation marks omitted); *Moore v. Phila.*, 461 F.3d

331, 341 (3d Cir. 2006).  What qualifies as an adverse employment action is broader than the statutory definition.   It includes "'firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Remp v. Alcon Labs., Inc.*, 701 F. App'x 103, 106–07 (3d Cir. 2017) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).   Actions that reduce opportunities for promotion or professional growth or substantially decrease an employee's earning potential can constitute adverse employment actions.  *Barnees v. Nationwide Mut. Ins. Co.*, 598 F. App'x 86, 90 (3d Cir. 2015) (citing *de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 21 (2d Cir. 1996)); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999).   Being placed on a performance improvement plan or receiving a written reprimand, without more, does not constitute an adverse employment action.  *Reynolds v. Dep't of the Army*, 439 F. App'x 150, 153 (3d Cir. 2011); *Mieczkowski*, 414 F. App'x at 446-47.

VA supervisors are required to counsel and evaluate their subordinates at least once annually, and issue a proficiency report, commonly referred to as an annual evaluation or annual report.  If at any time during this appraisal period "performance problems are observed which may be expected to result in a low/minimally satisfactory or unsatisfactory annual proficiency rating," the supervisor must inform the employee of the deficiencies and give her a reasonable opportunity to correct them and to demonstrate satisfactory performance before the annual report period ends.  This is accomplished by holding a counseling conference with the employee and issuing a PIP or a proficiency counseling.[9]

---

[9] *See* VA Handbook 5013, Part II at 3-4, 8-9 (Doc. No. 26-3 at 387-88, 392-93); PSUFs ¶ 12.

Kocher summarily contends that she was "treated in adverse and unusual ways that could only be explained by discrimination" when she was issued the November 2018 Proficiency Counseling. She claims that Schoen had very little experience "in supervision or performance counseling," and "had virtually no contact" with Kocher prior to issuing the 2018 counseling. If true, Schoen's inexperience suggests the reason for an inaccurate rating. It militates against any suggestion that Schoen's rating Kocher as "Low Satisfactory" was the result of a discriminatory animus.

The issuance of the November 2018 Proficiency Counseling did not adversely affect the terms and conditions of Kocher's employment. She was not suspended, denied a promotion, given significantly different responsibilities, or assigned less work. Her salary was unaffected. The counseling simply advised her about acceptable and desired conduct, informing her of deficiencies in her job performance to give her an opportunity to correct them and demonstrate satisfactory performance. Thus, issuing the Proficiency Counseling was not an adverse employment action.

As with the 2018 performance counseling, the FY 2018 proficiency report did not result in any tangible, detrimental change to the conditions of her employment. In her complaint, she alleges that the VA's actions caused "a loss of potential opportunity to advance" within the VA.[10] But, she has not produced any evidence to support her speculative conclusion. She never applied for a promotion. Nor was she denied one. Nor has she presented any evidence that the report will be a factor affecting her future ability to advance.

---

[10] Compl. ¶¶ 71, 75 (Doc. No. 1).

Even if the report is construed as a negative evaluation, there is no evidence that it had or will have any impact on Kocher's compensation or terms of employment. A negative evaluation, by itself, is not an adverse employment action. *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001).

Kocher is also critical of the Proficiency Report because she was not permitted to include her self-evaluation on VA Form 10-2623, even though her self-evaluation was included in the Report. Nonetheless, Kocher requested that it be transposed onto VA Form 10-2623. Gainsley informed her that it could not be placed on that template because it was a time-consuming process and not required. Because her self-evaluation is part of her personnel file, albeit not on the form Kocher preferred, there are no adverse employment consequences.

Kocher has not shown how any privacy violations resulted in a tangible, detrimental change to the conditions of her employment. After she complained about the references to her health condition, they were deleted. Schoen and Gainsley were required to take privacy and security training. Thus, there is no evidence that these disclosures adversely affected the conditions of her employment.

### Inference of Unlawful Discrimination

Kocher has also not established the fourth element of a *prima facie* case. There is no evidence that similarly situated non-members of the protected class were treated any differently than she was. The only person Kocher identifies as a comparator is Peter Leporati, who is male and only two years younger. Other than Leporati, Kocher has not identified a younger male or female who was treated differently. Leporati was, like Kocher, a Patient Safety Manager. He was promoted to Quality Management Supervisor

in September 2017, more than one year earlier than Kocher's complained-of evaluation was issued.  Kocher did not present any evidence that Leporati was rated any differently.  Furthermore, there is no evidence that Kocher was denied a promotion.  In short, there is no evidence of disparate treatment.

Kocher contends that although Schoen supervised multiple people, she was "suspiciously, somehow the only one of her subordinates for whom she elected to recommend performance counseling."[11]  Kocher's suspicion arises from her contention that Schoen was inexperienced in supervision or performance counseling, had virtually no contact with Kocher, had no personal knowledge of her work product, and knew little about her background, including that she had a doctorate, received an outstanding rating from her prior supervisor, and received the Cornerstone Award for team work and outstanding compliance of all program requirements.

Suspicion or subjective belief is insufficient to prove a claim of discrimination.  There must be circumstances from which a reasonable juror could infer discrimination.

Kocher claims that the VA discriminated against her when it "attempted to sabotage her ability to submit a self-assessment."[12]  She contends that Schoen refused to give her an official VA Form 10-2623 to use to submit her self-assessment.  So, Kocher prepared her own self-assessment on Microsoft Word.  Even though her self-assessment was submitted on September 22, 2018, she claims that the assessment was not attached to the proficiency report until "well into 2019."[13]  She argues that this departure from

---

[11] Pl.'s Mem. of Law in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10 (Doc. No. 26-2) ("Pl.'s Resp.").

[12] *Id.* at 13.

[13] *Id.* at 14.

standard procedure is "clearly an indicia of discrimination."[14]  Yet, she does not show how this delay adversely affected her employment.

Because Kocher's self-evaluation was attached to and acknowledged in her final proficiency report, she suffered no adverse employment consequences.  Nor was there evidence of discriminatory intent.

Kocher alleges, without evidentiary support, that Gainsley "knowingly and intentionally put [her] personal medical information into her proficiency report" and sent her an unencrypted email that included the Proficiency Report containing her health information and partial social security number as a form of "harassment and intimidation."[15]  Kocher does not explain how any of these disclosures adversely affected her employment or show that they were motivated by discriminatory intent.  There is not even a suggestion that she was targeted as an older female.

Because she suffered no adverse employment actions and she has not shown that similarly situated non-members of the protected class were treated any differently, Kocher has not made out a *prima facie* case of intentional discrimination based on her age or gender.

*Retaliation*

To succeed on a retaliation claim under Title VII, Kocher must prove: (1) she engaged in a protected activity; (2) the VA took an adverse employment action against her after or contemporaneous with her complaint; and (3) there is a causal link between her complaint and the adverse employment action.  *Daniels v. Sch. Dist. of Phila.*, 776

---

[14] *Id.*

[15] *Id.* at 12.

13

F.3d 181, 193 (3d Cir. 2015) (citation omitted); *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006).

It is unclear what EEO activity Kocher claims she engaged in prior to any of the actions at issue here.   Assuming Kocher did engage in protected activity, she did not suffer an adverse employment action.  Nor is there any causal connection between the actions she complains of and any protected activity.

Kocher contends that because Schoen was not knowledgeable about her background or job performance, she was influenced by Boxer, Kocher's second-line supervisor from January to July 2018, in deciding to issue the counseling.  Kocher claims that Boxer "was a major player in Plaintiff's prior EEO activity," and that Schoen was "well aware" of that when she decided to issue her November 2018 Proficiency Counseling.[16] She asserts that Boxer should have recused himself from reviewing the proficiency counseling "due to the sensitive nature of his involvement."[17]

Kocher does not identify what prior EEO activity Boxer had been involved in or when it happened.  She has not established a causal connection between any protected EEO activity and conduct by the VA that could have dissuaded a reasonable employee from making or supporting a charge of discrimination.  Thus, her retaliation claim fails.

### Conclusion

Because Kocher has not made out a *prima facie* case of intentional discrimination based on disparate treatment and has not established a retaliation claim, the VA is entitled to judgment in its favor.  Therefore, we shall grant the VA's motion.

---

[16] Pl.'s Resp. at 10.

[17] *Id*.